IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

LAURA VAUGHAN-BOSCO,

Plaintiff,

CASE NO.:

vs.

OFFICE OF THE STATE ATTORNEY,
EIGHTEENTH JUDICIAL CIRCUIT,

Defendant.
_________________________________/

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, LAURA VAUGHAN-BOSCO (hereinafter "Plaintiff"), by and through her undersigned attorneys, and sues Defendant, OFFICE OF THE STATE ATTORNEY, EIGHTEENTH JUDICIAL CIRCUIT (hereinafter "Defendant"), and alleges as follows:

## JURISDICTION AND VENUE

This Court has original jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343, the Age Discrimination in Employment Act, 29 U.S.C. § 626, the Americans with Disabilities Act, 42 U.S.C. § 12117, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5, and the Family and Medical Leave Act, 29 U.S.C. § 2617. This Court has supplemental jurisdiction over Plaintiff's state-

law claims under the Florida Civil Rights Act pursuant to 28 U.S.C. § 1367 because those claims arise from the same common nucleus of operative facts. Venue is proper in the Middle District of Florida, Orlando Division, pursuant to 28 U.S.C. § 1391 and 42 U.S.C. § 2000e-5(f)(3), because Defendant conducts business in this judicial district and the unlawful employment practices alleged herein were committed within this judicial district.

## INTRODUCTION

1. This is an action brought pursuant to the Florida Civil Rights Act, Fla. Stat. § 760.01 et seq. ("FCRA"), the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA"), the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101 et seq. ("ADA" or "ADAAA"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), and the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq. ("FMLA"), to recover front pay, back pay, economic damages, liquidated damages, compensatory damages, emotional distress damages including pain and suffering, punitive damages to the extent permitted by law, injunctive relief, reasonable attorneys' fees and costs, prejudgment interest, and any other relief to which Plaintiff is entitled.

## ADMINISTRATIVE PREREQUISITES

2. All conditions precedent to bringing this action have occurred, have been performed, or have been waived.

3. On November 17, 2025, Plaintiff timely filed a dual Charge of Discrimination with the Florida Commission on Human Relations ("FCHR") and the Equal Employment Opportunity Commission ("EEOC"), Charge No. 510-2026-03161, alleging discrimination on the basis of age and disability, and retaliation.

4. More than 180 days have elapsed since the filing of the Charge. On May 21, 2026, the EEOC issued Plaintiff a Notice of Right to Sue. This action is filed within ninety (90) days of Plaintiff's receipt of that Notice and is therefore timely.

5. Because Defendant is a governmental entity, the EEOC referred Plaintiff's request for a Notice of Right to Sue to the United States Department of Justice on May 18, 2026 for issuance of the Notice of Right to Sue as to Plaintiff's Title VII and ADA claims. Plaintiff has satisfied, or will have satisfied prior to any adjudication on the merits, all administrative prerequisites to the maintenance of her Title VII and ADA claims, and any remaining condition precedent has been or will be fulfilled.

6. More than 180 days have elapsed since the filing of Plaintiff's Charge with the FCHR without a determination, and Plaintiff is therefore authorized to proceed on her claims under the Florida Civil Rights Act pursuant to Fla. Stat. § 760.11.

7. Plaintiff's claims under the Family and Medical Leave Act are not subject to any administrative exhaustion requirement and are timely brought within the applicable limitations period.

8. Defendant is an "employer" as defined by each of the laws under which this action is brought and employs more than fifteen (15) employees, and more than fifty (50) employees within seventy-five (75) miles of Plaintiff's worksite.

## PARTIES AND GENERAL ALLEGATIONS

9. At all times material hereto, Plaintiff, a female, was a resident of Volusia County, Florida, born on September 25, 1958, who was employed by Defendant and worked at Defendant's offices in Seminole County, Florida.

10. Defendant, OFFICE OF THE STATE ATTORNEY, EIGHTEENTH JUDICIAL CIRCUIT, is a governmental entity organized and existing under the laws of the State of Florida, with its principal administrative offices located at 2725 Judge Fran Jamieson Way, Viera, Florida 32940. Defendant employs more than twenty (20) employees.

11. Plaintiff is a qualified individual with a disability under the ADAAA and the FCRA. Plaintiff was diagnosed with lung cancer in July 2024, underwent surgery in December 2024 resulting in the removal of approximately forty percent (40%) of her left lung, and continued chemotherapy treatment through at least October 2025. These conditions, including cancer that is episodic and/or in remission, substantially limit one or more major life activities, including but not limited to breathing, respiratory function, normal cell growth, working, and

performing manual tasks, and would be substantially limiting when active. Defendant was aware of Plaintiff's disability and had a record of her disability.

12. At all times material, Plaintiff was over the age of forty (40) and is a member of the protected class under the ADEA and the FCRA.

13. At all times material, Plaintiff was qualified to perform, and did perform, her job duties within and above the legitimate expectations of Defendant.

14. At all times material, Defendant acted in a willful manner, in bad faith, with malice, and with reckless disregard for Plaintiff's state and federally protected rights.

15. Plaintiff has been required to retain the undersigned counsel to represent her in this action and is obligated to pay her counsel a reasonable fee for legal services.

16. Plaintiff requests a jury trial for all issues so triable.

## FACTUAL ALLEGATIONS

17. Plaintiff has been employed as an Assistant State Attorney with the Office of the State Attorney, Eighteenth Judicial Circuit, since March 1993—over thirty-two (32) years of dedicated public service. Prior to joining the Eighteenth Judicial Circuit, Plaintiff served as an Assistant State Attorney in the Seventh Judicial Circuit beginning in March 1987.

18. In October 1993, State Attorney Norman R. Wolfinger promoted Plaintiff to Juvenile Division Chief for Seminole County, a position she held with distinction for over thirty (30) consecutive years. In this role, Plaintiff built exceptional relationships with all juvenile justice stakeholders, including law enforcement, the judiciary, the Department of Juvenile Justice, and the defense bar.

19. Plaintiff earned Board Certification in Juvenile Law from The Florida Bar and was appointed by the President of The Florida Bar to serve on the first Juvenile Law Board Certification Committee. Plaintiff was repeatedly selected to instruct at statewide Florida Prosecuting Attorneys Association ("FPAA") seminars and authored a circuit-wide administrative order governing juvenile probation-violation procedures.

20. Throughout her tenure, Plaintiff received commendations from the judiciary, law enforcement, and community stakeholders. Plaintiff has never been disciplined and consistently performed her duties within and above the legitimate expectations of Defendant. Multiple State Attorneys across multiple administrations retained Plaintiff as Juvenile Division Chief, a testament to her exceptional performance and institutional knowledge.

21. Prior to and separate from her cancer diagnosis, Plaintiff was subjected to a pattern of age-based discriminatory conduct by Defendant's agents. In or about 2022 or 2023, Defendant's Human Resources Director, Marianne Reynolds, made a

demeaning, age-based comment about Plaintiff to a prospective employee in Plaintiff's presence, stating that Plaintiff's resistance to a new electronic filing system was "a generational thing." The comment was false and demeaning and constituted a discriminatory remark directed at Plaintiff based on her age.

22. Plaintiff was subjected to repeated humiliation at office functions. At a Christmas party, an office trivia game posed the question of which Division Chief employees were "most likely to get fired working for." The answer given was Plaintiff. This "joke" was malicious, false, and demeaning, and it discouraged attorneys from seeking assignment to Plaintiff's division. Despite Plaintiff's repeated complaints to Chief Assistant State Attorney Stacey Salmons, the conduct was permitted to continue, including while Plaintiff was out on medical leave being treated for cancer.

23. Plaintiff was further denied discretionary raises for over twelve (12) years, and her significant professional accomplishments were routinely ignored and uncelebrated by the office, while younger colleagues' achievements were publicly recognized. Among other things, Plaintiff's appointment to the first Juvenile Law Board Certification Committee was never acknowledged office-wide, although recognition was given to a younger attorney who received an award; Plaintiff received no acknowledgment for her volunteer work funding office functions; and

Plaintiff's authorship of a circuit-wide administrative order was publicly credited to a younger supervisor.

24. In the period leading up to her diagnosis, and following significant staffing cuts to the Juvenile Division, Plaintiff was assigned to supervise two attorneys who had been perceived as problems in other divisions, requiring her to work extended hours and cancel personal plans. Despite Plaintiff's repeated requests to Chief Assistant State Attorney Salmons for assistance, Plaintiff was instead required to withdraw from an FPAA seminar she had long been scheduled to instruct.

25. On or about July 8, 2024, Plaintiff was hospitalized following a medical episode. During this hospitalization, Plaintiff was diagnosed with lung cancer. Plaintiff's secretary, Carol Carr, promptly notified administration, including HR Director Marianne Reynolds, of Plaintiff's condition.

26. Shortly after her hospitalization, Plaintiff requested Family and Medical Leave Act ("FMLA") paperwork from HR Director Marianne Reynolds on multiple occasions, including in writing by text message. Despite Plaintiff's repeated requests, and despite Reynolds's representation that she would provide the paperwork, FMLA paperwork was never provided to Plaintiff. Reynolds instead told Plaintiff she had "plenty of sick leave" and not to worry about FMLA protection, thereby discouraging Plaintiff from exercising her FMLA rights.

27. Between July 2024 and October 2025, Plaintiff underwent extensive testing, multiple minor surgical procedures, chemotherapy spanning approximately three months, and major surgery on December 26, 2024, during which approximately forty percent (40%) of her left lung was removed. Plaintiff achieved a cancer-free status following surgery. However, she was required to undergo a second round of chemotherapy beginning on or about January 31, 2025 and continuing through October 10, 2025, administered every three weeks.

28. While Plaintiff was on medical leave, and without notifying Plaintiff, Chief Assistant State Attorney Stacey Salmons relocated the Juvenile Division from its long-standing home at the Juvenile Justice Center to the main office at the Courthouse Annex in or about September 2024—fewer than twelve (12) weeks after Plaintiff's leave began. Plaintiff's staff were reassigned to other divisions. Plaintiff was neither consulted nor informed.

29. Will Scheiner was elected State Attorney for the Eighteenth Judicial Circuit in November 2024 and took office on January 7, 2025.

30. On January 22, 2025, Plaintiff met with Chief Assistant State Attorney Stacey Salmons and HR Director Marianne Reynolds regarding her return to work. Plaintiff explicitly requested to return to her position as Juvenile Division Chief, explaining her qualifications, expertise, and the importance of the position. State Attorney Will Scheiner was in the office but declined to participate in the meeting.

31. At the January 22, 2025 meeting, Salmons informed Plaintiff that she would not be returned to her position as Juvenile Division Chief. Instead, Plaintiff was told she would be assigned to the newly created "Early Resolution Misdemeanor Division" ("ER Division"), an area entirely outside her three decades of expertise. Plaintiff was led to believe this reassignment was temporary.

32. On or about February 3, 2025, just prior to Plaintiff's return to work, State Attorney Will Scheiner issued a written announcement that Dawn Courtright, an attorney approximately fifteen (15) years younger than Plaintiff and significantly less experienced in juvenile law, was being "promoted" to Juvenile Division Chief. Plaintiff's position of over thirty years had been permanently given to a younger, less qualified employee.

33. Although Plaintiff was permitted to retain her Division Chief title, her salary, and a parking space, the reassignment stripped Plaintiff of the supervisory authority, professional standing, specialized responsibilities, and area of expertise that defined her position, and imposed physically demanding duties incompatible with her post-surgical condition. The reassignment constituted a demotion in responsibilities, authority, and prestige, and a material adverse employment action, notwithstanding the nominal retention of title and pay.

34. Upon her return on February 3, 2025, Plaintiff was placed as the sole attorney in the ER Misdemeanor Division, a position requiring her to handle a full

docket of cases in an area of law she had never practiced, with only one week of training from "training attorney" John Namey. Plaintiff was required to review approximately two hundred (200) case files per week and to appear in court five days per week, every week, covering the workload of multiple attorneys.

35. Despite having undergone surgery that removed forty percent (40%) of her lung less than six weeks earlier, Plaintiff was required to carry boxes of case files to the courthouse, walking significant distances. These physically demanding tasks were inconsistent with Plaintiff's post-surgical limitations and recovery needs, and Defendant provided no accommodation for her documented medical condition.

36. Without prior notice or disclosure, Plaintiff was additionally required to cover Baker Act hearings in Longwood and Sanford on non-arraignment weeks, and to cover first appearances for attorneys in other divisions. Plaintiff had not handled a Baker Act proceeding since 1988. These additional duties were not disclosed to Plaintiff when her assignment was announced, are not standard Division Chief responsibilities, and were inconsistent with Plaintiff's documented medical restrictions.

37. In or about March 2025, while Plaintiff was still actively receiving chemotherapy and recovering from major lung surgery, Salmons required Plaintiff to personally pack and move her office and personal property, including furniture and a desk, from the Juvenile Justice Center. This task required multiple afternoons

during work weeks and an entire Saturday. Salmons did not inquire whether Plaintiff was physically capable of performing such tasks given her ongoing medical treatment.

38. On or about March 5, 2025, following a frustrating court experience, Plaintiff communicated her distress to HR Director Reynolds and, in a subsequent meeting with Salmons and Reynolds, explained the difficulty she was experiencing managing a full solo docket in an unfamiliar practice area while still undergoing chemotherapy and recovering from major lung surgery, and again requested to return to the Juvenile Division. Salmons responded that returning to Juvenile would "never happen" and offered only reassignment to a Domestic Violence intake role that was not a Division Chief position, which Plaintiff declined. Defendant took no meaningful steps to accommodate Plaintiff's medical condition or reduce her workload.

39. In May 2025, Plaintiff submitted leave requests for annual leave and for medical appointments, including surgical and chemotherapy appointments, after arranging coverage for her court obligations. For the first time in over thirty years of employment, Plaintiff's supervisor questioned and scrutinized her leave requests. While Salmons ultimately approved the leave, the scrutiny constituted disparate and retaliatory treatment.

40. On September 24, 2025, Salmons encountered Plaintiff in the break room and asked how she was doing and "How's the gig?" When Plaintiff responded that she was "not a fan," Salmons paused and stated, "I know."

41. On September 25, 2025, Plaintiff submitted a formal written request to State Attorney Will Scheiner requesting reassignment to the Juvenile Division, detailing her qualifications, her Board Certification in Juvenile Law (which was at risk of lapsing because she was no longer practicing juvenile law), and her health limitations. Scheiner never responded. HR Director Reynolds responded on his behalf, dismissively noting that Plaintiff retained her title and salary and had received a recent discretionary raise, and stating that Plaintiff was not being discriminated against.

42. On or about October 10, 2025, Plaintiff's treating oncologist, Dr. Bushra Ajaz of Mid-Florida Hematology Oncology, provided a written letter to Defendant requesting that Plaintiff be excused "from EXTRA work beyond her normal work duties, due to her long term medical condition," noting that Plaintiff was fatigued, had shortness of breath and decreased lung capacity, remained on active treatment, and should "not be under any additional stress."

43. Despite this medical documentation, Defendant not only failed to reduce Plaintiff's workload, but retaliated by assigning Plaintiff even more duties, including requiring her to cover first appearances for a colleague in a separate division and to

cover additional Baker Act hearings in Longwood during her non-arraignment weeks.

44. On November 17, 2025, Plaintiff filed a Charge of Discrimination with the EEOC and FCHR, alleging age discrimination, disability discrimination, and retaliation.

45. Following the filing of her Charge, Defendant continued to subject Plaintiff to discriminatory and retaliatory treatment, including its continued failure to reinstate her to the Juvenile Division, continued assignment of additional duties inconsistent with her medical restrictions, and continued failure to engage in any interactive process regarding reasonable accommodations.

46. On or about December 10, 2025, Plaintiff notified HR Director Reynolds and Chief Assistant State Attorney Salmons in writing that she required leave under the FMLA to care for her eight-year-old granddaughter, a family member with serious health conditions requiring full-time care, of whom Plaintiff had taken physical custody. Plaintiff again expressly requested that Defendant provide her with the FMLA paperwork.

47. As it had done following Plaintiff's own cancer diagnosis, Defendant failed to timely provide Plaintiff the FMLA notice and paperwork to which she was entitled, and failed to properly designate and administer Plaintiff's leave under the FMLA.

48. By email dated February 11, 2026, Reynolds informed Plaintiff that she was scheduled to return to the office full-time on March 9, 2026. Because of her caregiving obligations to her disabled granddaughter and the ongoing effects of Defendant's discriminatory and retaliatory conduct, Plaintiff was unable to return under the conditions Defendant imposed.

49. Having been stripped of the position she had held for over three decades, denied any accommodation, denied the FMLA protections she repeatedly requested, and confronted with a demand that she return under conditions Defendant knew she could not meet, Plaintiff was left with no reasonable alternative but to resign. In February 2026, after nearly thirty-nine (39) years of public service, Plaintiff submitted her resignation, informing Defendant that it "did not give [her] a choice except to resign." Defendant accepted the resignation on or about February 25, 2026. Plaintiff's resignation was a constructive discharge.

50. Defendant's articulated reasons for the adverse employment actions described above are false and pretextual. The temporal proximity between Plaintiff's requests for medical leave, her disability, her age, her requests for accommodation, and her protected complaints, on the one hand, and the adverse employment actions, on the other, demonstrate discriminatory and retaliatory motive. Defendant's contention that Plaintiff's reassignment was a mere "lateral

move" that she "chose," and that no additional work was required of her, is contradicted by the documented facts.

51. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer loss of her career and professional standing, loss of income, loss of employment and retirement benefits, loss of career advancement opportunities, jeopardy to her professional Board Certification, physical and emotional harm, mental anguish, humiliation, stress, loss of enjoyment of life, and other economic and non-economic damages.

## COUNT I

## FMLA – INTERFERENCE

52. Plaintiff re-alleges and incorporates by reference the allegations stated in Paragraphs 1 through 51 as though fully set forth herein.

53. At all times relevant, Plaintiff was an eligible employee under the FMLA, having been employed by Defendant for more than twelve (12) months and having worked at least 1,250 hours during the twelve-month period preceding her requests for leave, and Defendant was a covered employer under the FMLA.

54. Plaintiff was entitled to FMLA leave because she suffered from a serious health condition (lung cancer and its treatment) and, subsequently, because she was needed to care for a family member with a serious health condition.

55. Plaintiff exercised, and attempted to exercise, her rights under the FMLA by advising Defendant that she suffered from a serious health condition and would need leave for care and treatment, by requesting leave to care for a family member with a serious health condition, and by repeatedly requesting the FMLA paperwork necessary to invoke her rights.

56. Defendant interfered with, restrained, and denied Plaintiff's exercise of her rights under the FMLA in violation of 29 U.S.C. § 2615(a)(1), including by failing to provide Plaintiff with required FMLA notices and paperwork despite her repeated requests, failing to designate and properly administer her leave under the FMLA, discouraging her from exercising her FMLA rights, failing to restore her to her prior position, and imposing conditions on her return that Defendant knew she could not meet, culminating in her constructive discharge.

57. Defendant's actions were willful, malicious, knowing, and voluntary, and otherwise done with reckless indifference to Plaintiff's rights.

58. Plaintiff was injured as a result of Defendant's violations of the FMLA, for which she is entitled to legal and equitable relief.

WHEREFORE, Plaintiff requests that this Court:

a. Enter a judgment that Defendant's interference with Plaintiff's rights was a violation of the FMLA;

b. Enjoin and permanently restrain Defendant from further violations of the FMLA;

c. Direct Defendant to reinstate Plaintiff with full seniority to an equivalent position with back pay, interest, pension rights, and all benefits, or in the alternative, enter judgment pursuant to 29 U.S.C. § 2617(a)(1)(A)(i)(II) against Defendant and in favor of Plaintiff for the monetary losses she suffered as a direct result of Defendant's violations of the FMLA;

d. Award compensatory damages to Plaintiff;

e. Award back pay, with interest;

f. Award liquidated damages;

g. Award reasonable costs and attorneys' fees; and

h. Award such other relief to which Plaintiff is entitled, including but not limited to equitable relief.

**COUNT II**

**<u>FMLA – RETALIATION</u>**

59. Plaintiff re-alleges and incorporates by reference the allegations stated in Paragraphs 1 through 51 as though fully set forth herein.

60. Plaintiff engaged in activity protected under the FMLA by requesting and taking, and attempting to request and take, leave for her own serious health condition

and to care for a family member with a serious health condition, and by requesting the FMLA paperwork necessary to invoke her rights.

61. Defendant retaliated against Plaintiff for exercising and attempting to exercise her FMLA rights, in violation of 29 U.S.C. § 2615(a)(2), by, among other things, removing her from her position as Juvenile Division Chief upon her return from leave, assigning her to an unfamiliar and physically demanding role, increasing her duties, scrutinizing her leave, and constructively discharging her.

62. Plaintiff would not have been subjected to these adverse actions but for her exercise of rights protected by the FMLA.

63. Defendant's actions were willful, malicious, knowing, and voluntary, and otherwise done with reckless indifference to Plaintiff's rights.

64. Plaintiff was injured as a result of Defendant's willful violations of the FMLA, for which she is entitled to legal and injunctive relief.

WHEREFORE, Plaintiff requests that this Court:

a. Enter a judgment that Defendant's retaliation against Plaintiff was a violation of the FMLA;

b. Enjoin and permanently restrain Defendant from further violations of the FMLA;

c. Direct Defendant to reinstate Plaintiff with full seniority to an equivalent position with back pay, interest, pension rights, and all benefits, or in

the alternative, enter judgment pursuant to 29 U.S.C. § 2617(a)(1)(A)(i)(II) against Defendant and in favor of Plaintiff for the monetary losses she suffered as a direct result of Defendant's violations of the FMLA;

d. Award compensatory damages to Plaintiff;

e. Award back pay, with interest;

f. Award liquidated damages;

g. Award reasonable costs and attorneys' fees; and

h. Award such other relief to which Plaintiff is entitled, including but not limited to equitable relief.

**COUNT III**

**ADAAA – FAILURE TO ACCOMMODATE**

65. Plaintiff re-alleges and incorporates by reference the allegations stated in Paragraphs 1 through 51 as though fully set forth herein.

66. Plaintiff is a qualified individual with an actual disability, and a record of a disability, under the ADAAA. Plaintiff requested reasonable accommodations, including: (a) reinstatement to, or retention of, duties consistent with her physical limitations following surgery; and (b) a reduced workload and relief from extra duties during active chemotherapy, as requested in writing by her oncologist on October 10, 2025.

67. Defendant failed to provide reasonable accommodation and failed to engage in any good-faith interactive process. Defendant has no legitimate justification or undue-hardship defense for its refusal to accommodate Plaintiff.

68. By the conduct described above, Defendant engaged in unlawful employment practices, including a failure to accommodate, in violation of 42 U.S.C. § 12112(b)(5).

69. The failure to accommodate described above was done willfully, was malicious, and was done with reckless disregard for Plaintiff's rights under the ADAAA.

70. As a result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for a trial by jury and all legal and equitable relief allowed by law, including:

a. Back pay and benefits;

b. Interest on back pay;

c. Front pay and/or lost earning capacity, including loss of pension and retirement benefits;

d. Compensatory damages, including emotional distress damages;

e. Injunctive relief and reinstatement to Plaintiff's former position, or front pay in lieu thereof;

f. Prejudgment interest;

g. Punitive damages, to the extent permitted by law;

h. Costs and attorney's fees;

i. Such other relief as the Court may deem just and proper; and

j. Judgment for supplemental damages to offset the tax impact of any lump-sum damages awarded as provided under state and federal law.

**COUNT IV**

**<u>ADAAA – RETALIATION</u>**

71. Plaintiff re-alleges and incorporates by reference the allegations stated in Paragraphs 1 through 51 as though fully set forth herein.

72. Plaintiff engaged in activity protected under the ADAAA, 42 U.S.C. § 12203, by requesting reasonable accommodation for her disability, opposing disability discrimination, complaining of discriminatory treatment, submitting a written request for reassignment on September 25, 2025, and filing a Charge of Discrimination with the EEOC and FCHR on November 17, 2025.

73. In direct response to Plaintiff's protected activity, Defendant retaliated against Plaintiff by permanently stripping her of her Juvenile Division Chief position, assigning her to an unfamiliar and physically demanding role, ignoring her physician's written request for workload reduction, increasing her workload after receipt of the physician's note, and constructively discharging her.

74. Plaintiff would not have been subjected to these retaliatory actions but for her protected activity under the ADAAA.

75. The retaliation described above was done willfully, was malicious, and was done with reckless disregard for Plaintiff's rights under the ADAAA.

76. As a result of Defendant's unlawful retaliation, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for a trial by jury and all legal and equitable relief allowed by law, including:

a. Back pay and benefits;

b. Interest on back pay;

c. Front pay and/or lost earning capacity, including loss of pension and retirement benefits;

d. Compensatory damages, including emotional distress damages;

e. Injunctive relief and reinstatement to Plaintiff's former position, or front pay in lieu thereof;

f. Prejudgment interest;

g. Punitive damages, to the extent permitted by law;

h. Costs and attorney's fees;

i. Such other relief as the Court may deem just and proper; and

j. Judgment for supplemental damages to offset the tax impact of any lump-sum damages awarded as provided under state and federal law.

**COUNT V**

**ADAAA – DISABILITY DISCRIMINATION**

77. Plaintiff re-alleges and incorporates by reference the allegations stated in Paragraphs 1 through 51 as though fully set forth herein.

78. Plaintiff is a member of a protected class under the Americans with Disabilities Act due to her disabling conditions of lung cancer and the sequelae of its treatment, and Defendant had a record of her disability.

79. Plaintiff is a qualified individual with a disability who, with or without reasonable accommodation, could perform the essential functions of her position as Juvenile Division Chief.

80. Defendant discriminated against Plaintiff on the basis of her disability in violation of the ADAAA by, among other things: (a) permanently removing her from her Juvenile Division Chief position upon her return from medical leave; (b) replacing her with a younger, non-disabled employee; (c) assigning her to physically demanding duties inconsistent with her medical restrictions; (d) failing to provide reasonable accommodation; (e) ignoring her oncologist's written request for workload reduction; and (f) constructively discharging her.

81. Plaintiff would not have been subjected to these adverse employment actions but for her disability. The reasons given by Defendant for its employment actions are false and pretextual.

82. By the conduct described above, Defendant engaged in unlawful employment practices and discriminated against Plaintiff on account of her disability in violation of the Americans with Disabilities Act.

83. As a result of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for a trial by jury and all legal and equitable relief allowed by law, including:

a. Back pay and benefits;

b. Interest on back pay;

c. Front pay and/or lost earning capacity, including loss of pension and retirement benefits;

d. Compensatory damages, including emotional distress damages;

e. Injunctive relief and reinstatement to Plaintiff's former position, or front pay in lieu thereof;

f. Prejudgment interest;

g. Punitive damages, to the extent permitted by law;

h. Costs and attorney's fees;

i. Such other relief as the Court may deem just and proper; and

j. Judgment for supplemental damages to offset the tax impact of any lump-sum damages awarded as provided under state and federal law.

## COUNT VI

## ADEA – AGE DISCRIMINATION

84. Plaintiff re-alleges and incorporates by reference the allegations stated in Paragraphs 1 through 51 as though fully set forth herein.

85. Plaintiff is a member of the protected class under the Age Discrimination in Employment Act ("ADEA") due to her age.

86. By the conduct described above, Defendant engaged in unlawful employment practices and discriminated against Plaintiff on account of her age in violation of the ADEA, including by removing her from her position as Juvenile Division Chief, replacing her with a substantially younger and less qualified employee, and constructively discharging her.

87. Plaintiff would not have been subjected to these adverse employment actions but for her age. Defendant knew or should have known of the discrimination.

88. Defendant's violations of the ADEA were willful.

89. As a result of the unlawful discrimination described above, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for a trial by jury and all legal and equitable relief allowed by law, including:

a. Back pay and benefits;

b. Interest on back pay;

c. Front pay and/or lost earning capacity, including loss of pension and retirement benefits;

d. Liquidated damages;

e. Injunctive relief and reinstatement to Plaintiff's former position, or front pay in lieu thereof;

f. Prejudgment interest;

g. Costs and attorney's fees;

h. Such other relief as the Court may deem just and proper; and

i. Judgment for supplemental damages to offset the tax impact of any lump-sum damages awarded as provided under state and federal law.

**COUNT VII**

**<u>ADEA – RETALIATION</u>**

90. Plaintiff re-alleges and incorporates by reference the allegations stated in Paragraphs 1 through 51 as though fully set forth herein.

91. Plaintiff engaged in activity protected under the ADEA, 29 U.S.C. § 623(d), by opposing age discrimination, requesting reassignment to her former

position, complaining of discriminatory treatment, and filing a Charge of Discrimination with the EEOC and FCHR.

92. In direct response to Plaintiff's protected activity, Defendant retaliated against Plaintiff by subjecting her to the adverse employment actions described herein, including permanently stripping her of her position, assigning her to an unfamiliar and physically demanding role, assigning her additional duties, ignoring her written requests for reassignment, and constructively discharging her.

93. Plaintiff would not have been subjected to these retaliatory actions but for her protected activity under the ADEA.

94. The retaliation described above was willful and was done with reckless disregard for Plaintiff's rights under the ADEA.

95. As a direct and proximate result of the retaliation described above, Plaintiff has suffered and continues to suffer loss of income, loss of employment benefits, mental anguish, distress, humiliation, great expense, and loss of enjoyment of life.

WHEREFORE, Plaintiff prays for a trial by jury and all legal and equitable relief allowed by law, including:

a. Back pay and benefits;

b. Interest on back pay;

c. Front pay and/or lost earning capacity, including loss of pension and retirement benefits;

d. Liquidated damages;

e. Injunctive relief and reinstatement to Plaintiff's former position, or front pay in lieu thereof;

f. Prejudgment interest;

g. Costs and attorney's fees;

h. Such other relief as the Court may deem just and proper; and

i. Judgment for supplemental damages to offset the tax impact of any lump-sum damages awarded as provided under state and federal law.

**COUNT VIII**

**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 – RETALIATION**

96. Plaintiff re-alleges and incorporates by reference the allegations stated in Paragraphs 1 through 51 as though fully set forth herein.

97. Plaintiff engaged in activity protected under Title VII of the Civil Rights Act of 1964 by opposing what she reasonably and in good faith believed to be unlawful employment practices and by filing a Charge of Discrimination with the EEOC and FCHR on November 17, 2025.

98. In direct response to Plaintiff's protected activity, including her filing of the EEOC Charge on November 17, 2025, Defendant retaliated against Plaintiff by

continuing to subject her to adverse employment conditions, failing to reinstate her to the Juvenile Division, continuing to assign additional duties inconsistent with her medical restrictions, ignoring her requests for accommodation and reassignment, and constructively discharging her.

99. By the conduct described above, Defendant engaged in unlawful employment practices and retaliated against Plaintiff in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a).

100. The retaliation described above was done willfully, was malicious, and was done with reckless disregard for Plaintiff's rights under federal law.

101. As a result of the unlawful retaliation, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for a trial by jury and all legal and equitable relief allowed by law, including:

a. Back pay and benefits;

b. Interest on back pay;

c. Front pay and/or lost earning capacity, including loss of pension and retirement benefits;

d. Compensatory damages, including emotional distress damages;

e. Injunctive relief and reinstatement to Plaintiff's former position, or front pay in lieu thereof;

f. Prejudgment interest;

g. Punitive damages, to the extent permitted by law;

h. Costs and attorney's fees;

i. Such other relief as the Court may deem just and proper; and

j. Judgment for supplemental damages to offset the tax impact of any lump-sum damages awarded as provided under state and federal law.

**COUNT IX**

**FCRA – FAILURE TO ACCOMMODATE**

102. Plaintiff re-alleges and incorporates by reference the allegations stated in Paragraphs 1 through 51 as though fully set forth herein.

103. Plaintiff is a qualified individual with a disability under the Florida Civil Rights Act who, with or without reasonable accommodation, could perform the essential functions of her position.

104. Plaintiff requested reasonable accommodations, including: (a) reinstatement to, or retention of, duties consistent with her post-surgical physical limitations; and (b) a reduced workload and relief from extra duties during active chemotherapy treatment, as supported by her oncologist's written request dated October 10, 2025.

105. Defendant unreasonably denied and ignored Plaintiff's requests for accommodation and failed to engage in any good-faith interactive process to identify

reasonable accommodations. Defendant has no legitimate justification or undue-hardship defense for its failure to accommodate.

106. The failure to accommodate described above was done willfully, was malicious, and was done with reckless disregard for Plaintiff's rights under the Florida Civil Rights Act.

107. As a result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for a trial by jury and all legal and equitable relief allowed by law, including:

a. Back pay and benefits;

b. Interest on back pay;

c. Front pay and/or lost earning capacity, including loss of pension and retirement benefits;

d. Compensatory damages, including emotional distress damages;

e. Injunctive relief and reinstatement to Plaintiff's former position, or front pay in lieu thereof;

f. Prejudgment interest;

g. Punitive damages, to the extent permitted by law;

h. Costs and attorney's fees;

i. Such other relief as the Court may deem just and proper; and

j. Judgment for supplemental damages to offset the tax impact of any lump-sum damages awarded as provided under state and federal law.

## COUNT X

## FCRA – RETALIATION

108. Plaintiff re-alleges and incorporates by reference the allegations stated in Paragraphs 1 through 51 as though fully set forth herein.

109. Plaintiff engaged in protected activity under the Florida Civil Rights Act by, among other things: (a) requesting reasonable accommodation for her disability, including through her oncologist's written request of October 10, 2025; (b) complaining to Chief Assistant State Attorney Stacey Salmons and HR Director Marianne Reynolds about the discriminatory and unreasonable conditions of her employment; (c) submitting a formal written request to State Attorney Will Scheiner on September 25, 2025 seeking reassignment and identifying discriminatory treatment; and (d) filing a Charge of Discrimination with the EEOC and FCHR on November 17, 2025.

110. In direct response to Plaintiff's protected activity, Defendant retaliated against Plaintiff by, among other things: (a) refusing to reinstate her to the Juvenile Division; (b) assigning her additional duties inconsistent with her medical restrictions after she engaged in protected activity, including after her oncologist's written request; (c) scrutinizing and questioning her leave requests for the first time

in her career; (d) requiring her to personally pack and move furniture and property during chemotherapy; and (e) constructively discharging her.

111. The temporal proximity between Plaintiff's protected activity and the adverse employment actions constitutes evidence of retaliatory motive.

112. Plaintiff would not have been subjected to these adverse employment actions but for her protected activity. The reasons given by Defendant for its employment actions are false and pretextual.

113. The retaliation described above was done willfully, was malicious, and was done with reckless disregard for Plaintiff's rights under the Florida Civil Rights Act.

114. As a result of Defendant's unlawful retaliation, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for a trial by jury and all legal and equitable relief allowed by law, including:

a. Back pay and benefits;

b. Interest on back pay;

c. Front pay and/or lost earning capacity, including loss of pension and retirement benefits;

d. Compensatory damages, including emotional distress damages;

e. Injunctive relief and reinstatement to Plaintiff's former position, or front pay in lieu thereof;

f. Prejudgment interest;

g. Punitive damages, to the extent permitted by law;

h. Costs and attorney's fees;

i. Such other relief as the Court may deem just and proper; and

j. Judgment for supplemental damages to offset the tax impact of any lump-sum damages awarded as provided under state and federal law.

**COUNT XI**

**FCRA – DISABILITY DISCRIMINATION**

115. Plaintiff re-alleges and incorporates by reference the allegations stated in Paragraphs 1 through 51 as though fully set forth herein.

116. Plaintiff is a member of a protected class under the Florida Civil Rights Act due to her disability, and Defendant had a record of her disability.

117. Defendant discriminated against Plaintiff on the basis of her disability by, among other things: (a) permanently removing her from her position as Juvenile Division Chief upon her return from medical leave; (b) assigning her to a physically demanding division requiring her to carry heavy boxes and walk long distances despite her documented post-surgical limitations; (c) failing to provide reasonable accommodation; (d) assigning additional physically demanding duties after her

oncologist provided a written request for workload reduction; (e) replacing her with a younger, non-disabled employee; and (f) constructively discharging her.

118. Plaintiff would not have been subjected to these adverse employment actions but for her disability. The reasons given by Defendant for its employment actions are false and pretextual.

119. The discrimination described above was done willfully, was malicious, and was done with reckless disregard for Plaintiff's rights.

120. As a result of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for a trial by jury and all legal and equitable relief allowed by law, including:

a. Back pay and benefits;

b. Interest on back pay;

c. Front pay and/or lost earning capacity, including loss of pension and retirement benefits;

d. Compensatory damages, including emotional distress damages;

e. Injunctive relief and reinstatement to Plaintiff's former position, or front pay in lieu thereof;

f. Prejudgment interest;

g. Punitive damages, to the extent permitted by law;

h. Costs and attorney's fees;

i. Such other relief as the Court may deem just and proper; and

j. Judgment for supplemental damages to offset the tax impact of any lump-sum damages awarded as provided under state and federal law.

## COUNT XII

## FCRA – AGE DISCRIMINATION

121. Plaintiff re-alleges and incorporates by reference the allegations stated in Paragraphs 1 through 51 as though fully set forth herein.

122. Plaintiff is a member of a protected class under the Florida Civil Rights Act ("FCRA") due to her age.

123. By the conduct described above, Defendant engaged in unlawful employment practices and discriminated against Plaintiff on account of her age in violation of the Florida Civil Rights Act, including by removing her from her position as Juvenile Division Chief, replacing her with a substantially younger and less qualified employee, subjecting her to demeaning age-based comments and treatment, and constructively discharging her.

124. Plaintiff would not have been subjected to these adverse employment actions but for her age. The reasons given by Defendant for its employment actions are false and pretextual.

125. The discrimination described above was done willfully, was malicious, and was done with reckless disregard for Plaintiff's rights under the Florida Civil Rights Act.

126. As a result of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for a trial by jury and all legal and equitable relief allowed by law, including:

a. Back pay and benefits;

b. Interest on back pay;

c. Front pay and/or lost earning capacity, including loss of pension and retirement benefits;

d. Compensatory damages, including emotional distress damages;

e. Injunctive relief and reinstatement to Plaintiff's former position, or front pay in lieu thereof;

f. Prejudgment interest;

g. Punitive damages, to the extent permitted by law;

h. Costs and attorney's fees;

i. Such other relief as the Court may deem just and proper; and

j. Judgment for supplemental damages to offset the tax impact of any lump-sum damages awarded as provided under state and federal law.

Respectfully submitted this 18th day of August, 2026.

CHANFRAU & CHANFRAU

/s/ Kelly H. Chanfrau

Kelly H. Chanfrau, B.C.S.
Florida Bar No. 560111
701 N. Peninsula Drive
Daytona Beach, FL 32118
Telephone: (386) 258-7313
Facsimile: (386) 258-8783
Primary Email: Kelly@Chanfraulaw.com
Secondary Email: Gina@Chanfraulaw.com
Secondary Email: Amber@Chanfraulaw.com
Secondary Email: Katie@Chanfraulaw.com
Secondary Email: Alexia@Chanfraulaw.com
ATTORNEYS FOR PLAINTIFF